**In re Bruce VOGEL, Relator.**

No. 14–08–00631–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 9, 2008.

918

Pam Rea and Sara Vingiello, George William Walls, Houston, TX, for appellants.

Ruth Vernier, The Woodlands, Amy Lacy, Houston, TX, for appellees.

Panel consists of Justices YATES, ANDERSON, and BROWN.

## OPINION

LESLIE B. YATES, Justice.

This mandamus proceeding arises out of a child-custody dispute between the child's father and maternal grandmother. After the child's mother passed away, his grandmother filed a petition requesting that she be appointed sole managing conservator. The father moved to dismiss the suit, contending that the grandmother lacked standing. The trial court denied the motion to dismiss, and entered temporary orders naming the father and grandmother as joint managing conservators.

The father filed this mandamus proceeding to challenge the temporary orders and the denial of his motion to dismiss. We deny the petition for writ of mandamus.

## BACKGROUND

Relator is Bruce Vogel, the biological father of fourteen-year-old M.R.V. In a previous custody suit, Bruce was appointed as M.R.V.'s possessory conservator, and the child's mother, Lamenda "Mendy" Levitt, was named managing conservator. Bruce, an admitted alcoholic, has had little involvement in M.R.V.'s life in recent years. When Mendy died suddenly in March 2008, the child's maternal grandmother, real party in interest Martha Jo Nesbett, filed a petition for managing conservatorship. Bruce moved to dismiss Martha's petition for lack of standing, arguing that she had not demonstrated that the child's present circumstances significantly impaired his physical health or emotional development.

During hearings conducted over two days, the respondent[1] denied Bruce's motion to dismiss. The trial court then entered temporary orders appointing Bruce and Martha as joint managing conservators. Subsequently, the trial court conducted an unrecorded hearing including an in-chambers interview of M.R.V. Following the interview, the trial court issued supplemental temporary orders suspending Bruce's possession and access to the child except in the discretion of the amicus attorney. In response, Bruce filed this mandamus action, in which he contends that (1) Martha lacks legal standing to request managing conservatorship, and (2) the trial court abused its discretion in naming Martha as a joint managing conservator because she failed to overcome the "parental presumption."

## STANDARD OF REVIEW

Mandamus relief is available if the relator establishes a clear abuse of discretion for which there is no adequate remedy at law. *In re AutoNation, Inc.,* 228 S.W.3d 663, 667 (Tex.2007) (orig.proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding). With respect to the resolution of factual issues, the reviewing court may not substitute its judgment for that of the trial court. *Id.* Thus, the relator therefore must establish that the trial court reasonably could have reached only one decision. *Id.* at 840. On the other hand, a trial court has no discretion in determining what the law is or applying the law to the facts; therefore, a clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.* Because a trial court cannot abuse its discretion if it reaches the correct result for the wrong reason, we will uphold the trial court's order on any ground supported by the mandamus record. *See In re ExxonMobil Corp.,* 97 S.W.3d 353, 358 n. 5 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding); *Luxenberg v. Marshall,* 835 S.W.2d 136, 141–42 (Tex.App.-Dallas 1992, orig. proceeding).

## STANDING

In his first issue, Bruce argues that Martha lacks standing to request managing conservatorship of M.R.V. Standing, which is implicit in the concept of subject-matter jurisdiction, is a threshold issue in a custody proceeding. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993); *In re SSJ–J,* 153 S.W.3d 132, 134 (Tex.App.-San Antonio 2004, no pet.). We review a party's legal standing, which is a question of

---

1. Respondent is the Honorable Lisa Millard, presiding judge of the 310th Judicial District Court of Harris County.

law, under the *de novo* standard. *Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 670 (Tex.App.-Houston [14th Dist.] 2006, pet. denied), *cert. denied*, —— U.S. ——, 128 S.Ct. 432, 169 L.Ed.2d 261 (2007). We construe the petition in favor of the pleader, and determine whether any evidence in the record supports standing. *Id.* at 671. Standing is determined as of the time that suit was filed in the trial court. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 n. 9.

■■■ Martha, as M.R.V.'s grandparent, has standing to file an original suit for managing conservatorship [2] if she provided satisfactory proof to the trial court that appointment "is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development[.]" Tex. Fam.Code Ann. § 102.004(a)(1) (Vernon Supp.2008). Bruce seeks to add two extra prerequisites to Martha's standing requirement. First, he claims that Martha must demonstrate *imminent* substantial impairment. Second, he seeks to engraft the parental presumption onto the standing requirement. We decline to impose additional requirements upon the plain statutory language, and hold that Martha has legal standing to press a claim for managing conservatorship.

### A. Immediate Danger

■■■ Before 1995, the standing statute—Family Code section 11.03—required that a petitioner demonstrate "a serious and *immediate* question concerning the welfare of the child[.]" *See, e.g., In re Pringle*, 862 S.W.2d 722, 724–25, 726 n. 5 (Tex.App.-Tyler 1993, no writ) (emphasis added).[3] In 1995, however, the Legislature repealed title 2, including section 11.03, as a part of its recodification of the Family Code. *See* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282 (amended 1999) (current version at Tex. Fam.Code Ann. § 102.004(a) (Vernon Supp.2008)). The current standing statute omits any immediacy requirement. *See* Tex. Fam.Code Ann. § 102.004(a)(1). We presume that any word that was omitted from a statute was excluded for a purpose. *Laidlaw Waste Sys. (Dallas) v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex.1995). Therefore, we adhere to the plain statutory language, and decline to recognize an immediacy requirement that the Legislature deigned to remove from the standing statute.[4] *See St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997).

### B. Parental Presumption

■■■ Where the parental presumption applies, the non-parent must prove by a preponderance of evidence that appointment of the parent as sole managing con-

**2.** A person who has standing to file an original conservatorship suit under chapter 102 may also file a suit for modification in a trial court with continuing, exclusive jurisdiction. Tex. Fam.Code Ann. § 156.002(b) (Vernon 2002).

**3.** *See also* Act of May 23, 1987, 70th Leg., R.S., ch. 744, § 1, 1987 Tex. Gen. Laws 2666, *repealed by* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282.

**4.** Other Texas courts have similarly concluded that a grandparent need not demonstrate an *immediate* danger to the child to have standing to seek conservatorship. *See, e.g., In re Pharis*, No. 12–06–00350–CV, 2006 WL 3735107, at *1 n. 3 (Tex.App.-Tyler Dec.20, 2006, orig. proceeding) (mem.op.); *In re McElhaney*, No. 07–04–00577–CV, 2005 WL 66351, at *1 n. 1 (Tex.App.-Amarillo Jan.12, 2005, orig. proceeding) (mem.op.); *In re K.P.O.*, No. 11–98–00269–CV, 2000 WL 34234982, at *2 (Tex.App.-Eastland Feb.3, 2000, no pet.) (not designated for publication); *see also Whitworth v. Whitworth*, 222 S.W.3d 616, 621–22 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (impliedly rejecting immediacy requirement urged by dissent).

servator would result in serious physical or emotional harm to the child. *See, e.g.,* Tex. Fam.Code Ann. § 153.131(a) (Vernon 2002); *Brook v. Brook,* 881 S.W.2d 297, 298 (Tex.1994). However, the plain statutory language does not require a grandparent to overcome the parental presumption merely to have standing to bring suit,[5] and we will enforce the statute as written. *See City of Rockwall v. Hughes,* 246 S.W.3d 621, 631 (Tex.2008) ("[C]hanging the meaning of the statute by adding words to it, we believe, is a legislative function, not a judicial function."); *Jones v. Liberty Mut. Ins. Co.,* 745 S.W.2d 901, 902 (Tex.1988).

### C. Substantial Impairment

█ In determining standing, we examine M.R.V.'s present circumstances as of March 28, 2008, the date that Martha filed her petition. *See Tex. Ass'n of Bus.,* 852 S.W.2d at 446 n. 9. We conclude that the record contains evidence that M.R.V.'s present circumstances on March 28 would significantly impair the child's physical health or emotional development.

M.R.V. enjoyed a "very strong" relationship with Mendy, and there was testimony as to concerns about the child's emotional health after his mother's sudden death on March 15. Although the plan was for M.R.V. to stay with Martha, the child disappeared during his mother's funeral and a "missing juvenile" report was filed. Bruce, accompanied by Mendy's putative boyfriend, had removed M.R.V. from the funeral without informing Martha, and immediately took the child to a lawyer's office. The record contains evidence that Bruce's decision to remove M.R.V. from his mother's funeral was not in the child's best interest. After leaving the lawyer's office, Bruce left M.R.V. in the care of non-relative family friends. Martha testi-

fied that this living arrangement would present "giant concerns" for the child's emotional development.

Bruce admits to long-term alcoholism and, in fact, drank heavily for three days after learning of Mendy's death. Bruce testified that his first day of sobriety was March 28, the date Martha filed her petition. Bruce admitted that he could not provide for his son's financial needs at that time. There was also testimony that it would be "harmful" for M.R.V. to live with his father.

Given these facts, we conclude that the trial court reasonably could have found that M.R.V.'s present circumstances on March 28, including his living apart from family members, would significantly impair his physical health or emotional development. *See In re K.R.P.,* 80 S.W.3d 669, 677 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). We hold that Martha has established her standing to petition for managing conservatorship of her grandson.

We therefore overrule relator's first issue.

### APPLICATION OF PARENTAL PRESUMPTION

█ In his second issue, Bruce contends that the trial court abused its discretion in appointing Martha as joint managing conservator because Martha did not overcome the parental presumption. Because we conclude that Martha's lawsuit seeks to modify the 1995 custody order, however, we hold that the parental presumption does not apply.

█ A "modification suit" refers to an action in which a party attempts to effectuate a change in visitation rights following the entry of an initial custody order. *See* Tex. Fam.Code Ann. § 156.001

---

**5.** *See* Tex. Fam.Code Ann. § 102.004(a)(1); *SSJ–J,* 153 S.W.3d at 137–38 ("[S]tanding to sue does not mean a right to win, but merely a right to be heard in court.") (citation omitted).

(Vernon 2002); *In re P.D.M.*, 117 S.W.3d 453, 456, 461 (Tex.App.-Fort Worth 2003, pet. denied). The distinction between an original conservatorship suit and a modification proceeding is "more than procedural or semantic." *In re C.A.M.M.*, 243 S.W.3d 211, 215 (Tex.App.-Houston [14th Dist.] 2007, pet. filed). The trial court is required to apply the parental presumption in an original proceeding, but not in a modification action. *Id.* at 215–16; *In re V.L.K.*, 24 S.W.3d 338, 342–43 (Tex.2000). Therefore, "once custody, even between two parents, is established by court order, the parental presumption does not apply to any subsequent custody proceeding regardless of the parties involved." *P.D.M.*, 117 S.W.3d at 457–58; *V.L.K.*, 24 S.W.3d at 340, 343.

In 1994, Mendy and Bruce litigated M.R.V.'s conservatorship in the 310th District Court. Custody was established by a May 1, 1995 Order Establishing Paternity, under which Mendy was appointed managing conservator and Bruce was named possessory conservator. After Mendy's death, Martha filed a petition for conservatorship in the same district court, bearing the cause number from the 1994 lawsuit.[6] Both parties have filed documents conceding that the 310th District Court has "continuing, exclusive jurisdiction" and, in fact, Bruce previously has asked the respondent to take judicial notice of the court's 1994 file.

The underlying lawsuit, then, is one in which Martha seeks to effect a change in visitation rights following the entry of an initial custody order in 1995. Therefore, this is a modification proceeding in which the parental presumption does not apply. *See C.A.M.M.*, 243 S.W.3d at 217 (describing, as modification proceeding, action to modify prior order "following the death of a sole managing conservator"); *P.D.M.*, 117 S.W.3d at 457–58; *V.L.K.*, 24 S.W.3d at 340, 343. Therefore, Martha need demonstrate only that modification would be in M.R.V.'s best interest and that the circumstances have "materially and substantially changed" since the 1995 custody order.[7] *See* Tex. Fam.Code Ann. § 156.101(1) (Vernon Supp.2008).

### BEST INTEREST OF THE CHILD

In determining M.R.V.'s best interest in this modification proceeding, the trial court may consider the following non-exclusive list of factors: (1) his desires, (2) his emotional and physical needs now and in the future, (3) any emotional and physical danger to him now and in the future, (4) the parental abilities of those seeking primary possession, (5) the programs available to assist these individuals in promoting the child's best interest, (6) their respective plans for him, (7) the stability of each home, (8) any acts or omissions by the parent indicating that the existing parent-child relationship is improper, (9) any excuse for the parent's acts or omissions, (10) the child's need for stability, and (11) the need to prevent constant re-litigation over conservatorship.[8]

6. Were Martha not seeking to modify the 1995 custody order, there would have been no need for her to file a petition, bearing the 1994 cause number, in the court with continuing jurisdiction. *See P.D.M.*, 117 S.W.3d at 456–57.

7. Bruce has not challenged the first modification element, that is, proof of a material and substantial change. *See* Tex.R.App. P. 52.3(h); *see also P.D.M.*, 117 S.W.3d at 456 n. 1 ("Here, the circumstances of the children affected by the [divorce] decree have materially and substantially changed by virtue of the death of their mother, their sole managing conservator, authorizing the trial court to modify the portion of Father and Mother's divorce decree providing for conservatorship.").

8. The record does not contain evidence as to all of these factors, so we must limit our discussion to those factors that are addressed

924

*See C.A.M.M.*, 243 S.W.3d at 221. Addressing those factors that are present here, we conclude that the record permitted the trial court to find that the temporary appointment of Martha as joint managing conservator would be in M.R.V.'s best interest.

We begin our analysis by noting that, following an in-camera interview of M.R.V., the trial court suspended Bruce's visitation and access rights.[9] The record also contains evidence that, when Bruce attempted to telephone his son in recent years, M.R.V. would refuse to answer the phone or speak with his father. This evidence of M.R.V.'s desires supports the trial court's decision to appoint Martha as joint managing conservator.

The trial court's ruling is also supported by evidence as to M.R.V.'s emotional and physical needs, and the possible emotional and physical danger to him. Much of this evidence relates to Bruce's long-term alcoholism, and includes the following testimony:

- Bruce has suffered from alcoholism for fifteen to twenty years. When M.R.V. was a baby, Bruce lived with Mendy and M.R.V., and was seen to be intoxicated around the baby.
- Bruce has continued to drink until very recently. In the past two years, he has been seen drunk and visibly swaying while walking on the street. Thus, Mendy intentionally tried to keep M.R.V. away from his father, because of Bruce's alcoholism.

- Bruce did not stop drinking until after Mendy's death, following a three-day period of binge-drinking that prompted him to join Alcoholics Anonymous. Bruce states that he is on the first step of the Alcoholics Anonymous twelve-step program. As of the custody hearing, Bruce had been sober for two months which, while encouraging, is not a long period of sobriety. Bruce admits that he feels the urge to resume drinking, which is not unusual for a recovering alcoholic who faces a daily challenge to remain sober.
- A parent's alcoholism can cause emotional damage to a child. This danger is more pronounced for M.R.V., because both of his biological parents have suffered from alcohol abuse, and he therefore has an increased genetic chance of becoming an alcoholic. Accordingly, he needs to be in a non-drinking environment, such as Martha's house. Were Bruce to resume drinking, his alcoholism would present significant problems to M.R.V.

A trial court does not abuse its discretion in denying sole managing conservatorship to a parent with alcohol problems. *See, e.g., Thomas v. Thomas*, 852 S.W.2d 31, 34–36 (Tex.App.-Waco 1993, no writ).[10]

Other factors support the trial court's decision to appoint Martha as joint managing conservator. Bruce's plans for M.R.V., if awarded sole conservatorship, would entail that Mendy's alleged boyfriend—a non-relative—be the primary

---

by the record. *See C.A.M.M.*, 243 S.W.3d at 221 n. 15.

9. Upon request, a trial court shall interview a child 12 years of age or older "to determine the child's wishes as to conservatorship." Tex. Fam.Code Ann. § 153.009(a) (Vernon Supp. 2008). The trial court's interview of M.R.V. does not appear to have been recorded. *See id.* § 153.009(f).

10. *See also In re C.R.T.*, 61 S.W.3d 62, 67 (Tex.App.-Amarillo 2001, pet. denied) (noting mother's dependence upon intoxicating substances during children's lifetimes); *In re Walters*, 39 S.W.3d 280, 288–89 (Tex.App.-Texarkana 2001, no pet.) (finding that appointment of alcoholic parent would not be in child's best interest); *In re N.B.B.*, No. 04–06–00342–CV, 2007 WL 3171267, at *8 (Tex.App.-San Antonio Oct.31, 2007, no pet.) (mem.op.).

caretaker for an indeterminate period of time because of the child's lack of familiarity with his father. This arrangement would not promote the child's need for stability. The record demonstrates that Bruce has not been a particularly stable influence on M.R.V. thus far. *See In re De La Pena,* 999 S.W.2d 521, 529 (Tex. App.-El Paso 1999, no pet.) (inferring significant impairment from "placement with a parent who has a poor track record for stability and continuity"). Bruce did not exercise his visitation rights in the last two years, and the trial court may consider a parent's non-visitation in appointing a non-parent as managing conservator. *In re M.W.,* 959 S.W.2d 661, 666 (Tex.App.-Tyler 1997, writ denied) (citing *May,* 829 S.W.2d at 375); *N.B.B.,* 2007 WL 3171267, at *7.

■ Moreover, courts may consider a parent's long-term employment and financial stability in determining conservatorship issues. *See Thomas,* 852 S.W.2d at 35; *C.R.T.,* 61 S.W.3d at 67; *In re B.P.,* No. 02-07-00251-CV, 2008 WL 2639264, at *5 (Tex.App.-Fort Worth July 3, 2008, no pet.) (mem.op.) (involving parent's indifference towards steady employment). The evidence demonstrates that Bruce has been unable to maintain steady, gainful employment over the years. He has no money in his checking account, and has no car, savings account, credit cards, property, or emergency funds with which to support M.R.V. Bruce's inability to provide financial support for M.R.V. is also evidenced by his significant child-support arrearages, leading to numerous arrest warrants.[11]

■ Finally, because safety, security, and stability are considered critical to child development, in determining the child's best interest, the trial court may consider the potential concerns posed by uprooting the child from a stable environment. *See In re G.R.W.,* 191 S.W.3d 896, 900 (Tex. App.-Texarkana 2006, no pet.) (citing *Chavez v. Chavez,* 148 S.W.3d 449, 458–59 (Tex.App.-El Paso 2004, no pet.)); *In re Rodriguez,* 940 S.W.2d 265, 270–75 (Tex. App.-San Antonio 1997, writ denied). Appointment of Bruce as sole managing conservator would amount to removing M.R.V. from his grandmother, who has been involved in his life, and instead placing the child with a person with whom M.R.V. has enjoyed almost no relationship in the past few years, and from whom the child has chosen to dissociate himself.

■ By their very nature, custody disputes are inherently fact-intensive. *De La Pena,* 999 S.W.2d at 529. We routinely defer to the fact finder in matters of credibility and demeanor, and particularly so in custody proceedings. *See id.* After reviewing the evidence in light of the child's best interest, we hold that the temporary appointment of Martha as joint managing conservator has evidentiary support.

Therefore, we overrule relator's second issue.

### CONCLUSION

Without passing on the merits of Martha's claims, we hold that she has legal standing to pursue her lawsuit for managing conservatorship. We further hold that sufficient evidence demonstrates that the trial court's temporary appointment of Martha as a joint managing conservator is in this child's best interest.

11. Although an unidentified benefactor paid Bruce's support arrearages on the first day of the trial court's conservatorship hearing, in deciding the child's best interest the trial court was nonetheless entitled to consider relator's previous failure to support his son's financial needs.

Accordingly, we deny the petition for writ of mandamus.