**In re Dolores CERVANTES, Lupe Cervantes, Olga Rubio, Michael Abelino and Ashli Michelle Cervantes.**

**No. 10–09–00261–CV.**

Court of Appeals of Texas, Waco.

Nov. 10, 2009.

C. Denean Avery, Attorney at Law, Corsicana, TX, for Appellant/Relator.

Gregory E. Wilhelm, Waxahachie, TX, for Appellee/Respondent.

Gloria Ortiz, Attorney at Law, Jeannette M. Loucks, Loucks & Drew PLLC, Joe F. Grubbs, Ellis County District Attorney, Waxahachie, TX, Trevor A. Woodruff, Texas Dept. of Family & Prot. Ser., Austin, TX, for Real Party in Interest.

Kevin J. McDonnell, Attorney at Law, Waxahachie, TX, Attorney Ad Litem.

Patricia Norvedt, Waxahachie, TX, Guardian Ad Litem.

Robert J. Carroll, Attorney at Law, Waxahachie, TX, for Intervenor.

Before Chief Justice GRAY, Justice REYNA, and Justice DAVIS.

## OPINION ON REHEARING

FELIPE REYNA, Justice.

Relators seek a writ of mandamus compelling Respondent, the Honorable Greg Wilhelm, Judge of the County Court at Law No. 1 of Ellis County, to set aside an oral ruling striking their original petition to be appointed as permanent managing conservators of the child the subject of the

suit. In our original opinion, we denied the petition because Relators had failed to provide a reporter's record from the hearing in which Respondent made the complained-of rulings. They have now provided a copy of that record and have filed a motion for rehearing. We will grant the motion for rehearing, withdraw our prior opinion and judgment, and substitute the following opinion. We will conditionally grant the requested writ.

## Background

According to the mandamus record, the Department of Family and Protective Services filed an original petition for termination of parental rights in June 2008. The parents are "James" and "Ophelia."[1] In February 2009, the foster parents filed a petition in intervention seeking adoption of the child. One month later, the maternal great-aunt and great-uncle filed a petition in intervention. In the following weeks, the maternal great-grandmother, a maternal aunt and a maternal uncle all sought to intervene. Respondent granted the foster parents leave to intervene but denied such leave to the relatives who sought intervention.

In July 2009, Relators (the five relatives who were denied leave to intervene) filed an original petition to be appointed as permanent managing conservators of the child. The great-aunt Dolores and great-uncle Lupe alleged standing under section 102.003(a)(10) of the Family Code while the other relatives alleged standing under section 102.004. This petition is supported by an affidavit of relinquishment of parental rights signed by the father James. Relators contemporaneously filed a motion to consolidate their suit with the termination suit.

The Department responded with a plea to the jurisdiction and motion to strike the Relators' petition. The Department challenged the standing of the great-aunt Dolores and the great-uncle Lupe on the grounds that James's affidavit of relinquishment was not "valid and/or voluntary" because: (1) it was made without the presence or counsel of James's attorney ad litem or his guardian ad litem; and (2) it did not fully comply with section 161.003 of the Family Code. The Department challenged the other relatives' standing on the grounds that they had failed to allege that: (1) the child's present circumstances would significantly impair his physical health or emotional development; (2) *both* parents had consented to the suit; or (3) they are related to the child within the third degree of consanguinity.

The Department also specially excepted to the Relators' petition on the grounds, among others, that James's affidavit of relinquishment did not apply to all five petitioners and the allegations are vague regarding the type of conservatorship sought by each petitioner.

At the hearing on the Department's motion, an affidavit signed by James in June 2009 (34 days before the relinquishment affidavit) was admitted in evidence.[2] In this affidavit, James did not relinquish his parental rights but did state that he was aware of the pending termination proceedings and further stated that, if his parental rights were terminated, he desired that his

---

1. To protect the identity of the child who is the subject of this suit, we shall refer hereinafter to the parents by pseudonyms. *See* TEX. FAM.CODE ANN. § 109.002(d) (Vernon 2008); TEX.R.APP. P. 9.8(b)(1).

2. A guardian ad litem had been appointed for James in April 2009 because he was hospitalized following a biking accident. According to the testimony, the guardian ad litem played no role in James's signing of either affidavit.

child be adopted by Dolores and Lupe.[3] James testified that he understands that, if his parental rights are terminated, he may not have any further contact with his child, but he also testified that he believes he should continue to have the right to have contact with his child even if his rights are terminated.

Relators also offered the testimony of a guardian ad litem, Janet Traylor, who had been appointed for the mother Ophelia because of questions regarding her mental competence raised in a Dallas County criminal proceeding. Traylor was prepared to testify about Ophelia's competence and her consent to Relators' suit. Respondent sustained the Department's objection to her testimony but permitted Relators to make an offer of proof. According to Traylor, Ophelia was ultimately found competent to stand trial, and a jury found her not guilty by reason of insanity of assaulting James. Traylor testified that Ophelia had twice told her that she wanted her child to be adopted by her aunt and uncle or one of the other Relators if they were unable to adopt him. Relators offered in evidence Ophelia's unsworn statement in which she expresses her desire for Relators to adopt her child.

Respondent granted the plea to the jurisdiction, stating on the record his findings that: (1) Relators failed to establish that "the child's present circumstances would significantly impair the child's physical health or emotional development"; (2) Relators failed to establish that Ophelia was competent to consent to Relators' suit; (3) Relators failed to establish that James voluntarily consented to Relators's suit

and/or understood that by relinquishing his parental rights he would not have the right to continue to see his child.

The hearing in which Respondent made the challenged rulings occurred on August 7. Relators filed their original petition and a motion for emergency stay[4] on August 12. We issued a stay order the next day and requested a response to the petition. After receiving responses from the Department and from the foster parents, we issued a memorandum opinion on September 23 denying the petition and lifting the stay order.

Relators filed a motion for rehearing and for emergency stay on October 2.[5] We requested responses to the motion for rehearing which were due on October 7. After receiving responses from Respondent and several parties, we again stayed the trial proceedings in the Department's suit and requested supplemental pleadings responsive to the merits of Relators' mandamus petition or their motion for rehearing which were due on October 18. We have received supplemental responses from the Department and from the foster parents.

Relators recently filed a motion for leave to supplement their mandamus petition and the mandamus record. Relators have filed a reporter's record from the August 7 hearing in which the complained-of rulings were made. They have also tendered a supplemental mandamus petition which appears to differ from the original petition only by the inclusion of citations to the reporter's record.

---

3. Respondent admitted this affidavit only for the limited purpose of showing James's state of mind on the date it was signed.

4. When Relators filed their original petition, the Department's suit for termination of pa-

rental rights was set for jury trial on August 17.

5. When Relators filed their motion for rehearing, the termination suit was set for jury trial on October 12.

### Deficiencies in Relators' Pleadings

The Department and the foster parents note three deficiencies in the form of Relators' pleadings. They contend: (1) Relators' certification does not comply with Rule of Appellate Procedure 52.3(j); (2) the petition does not provide record references; and (3) Relators failed to provide a reporter's record from the hearing in which Respondent made the complained-of rulings.

The Department and the foster parents similarly urge us to deny Relators' motion for rehearing because they should not now be permitted to cure the deficiencies noted. And although the parents have not previously made an appearance in this original proceeding, both have now filed responses in support of Relators' motion for rehearing.

■ We begin with Relators failure to provide a reporter's record or citations in their petition to that record. After we initially denied their mandamus petition, Relators acted to correct these deficiencies. The issue at this juncture is whether they should be permitted to do so at this late date. Rule 52.7, which governs supplementation of the mandamus record, provides, "After the record is filed, relator or any other party to the proceeding may file additional materials for inclusion in the record." TEX.R.APP. P. 52.7. The parties refer to cases construing the rules governing supplementation of the *appellate* record for guidance. Although the rules are worded differently,[6] they all reflect a generally permissive approach to supplementation of the record. *See Crown Life Ins. Co. v. Estate of Gonzalez*, 820 S.W.2d 121, 121 (Tex.1991) (per curiam) (former Rule 55 was "to be liberally construed so that the decisions of the courts of appeals turn on substance rather than procedural technicality"); *Aluminum Chems. (Bolivia) Inc. v. Bechtel Corp.*, 28 S.W.3d 49, 50 (Tex.App.-Texarkana, order) ("new Rule 34.6(d) is even more lenient"), *disp. on merits*, 28 S.W.3d 64 (Tex.App.-Texarkana 2000, no pet.); *Roberts v. Roberts*, 999 S.W.2d 424, 438 (Tex.App.-El Paso 1999, no pet.) (similarly describing Rule 34.6(d) as "more lenient"). In addition, our research has disclosed little authority regarding supplementation of a mandamus record.[7] Thus, we look to the cases regarding supplementation of the appellate record for guidance.

---

6. Rule 34.5(c) governs supplementation of the clerk's record and provides in pertinent part:
 > If a relevant item has been omitted from the clerk's record, the trial court, the appellate court, or any party may by letter direct the trial court clerk to prepare, certify, and file in the appellate court a supplement containing the omitted item.

 TEX.R.APP. P. 34.5(c)(1).
 Rule 34.6(d) governs supplementation of the reporter's record and provides in pertinent part:
 > If anything relevant is omitted from the reporter's record, the trial court, the appellate court, or any party may by letter direct the official court reporter to prepare, certify, and file in the appellate court a supplemental reporter's record containing the omitted items.

 *Id.* 34.6(d).

7. *But see In re Lynd Co.*, 195 S.W.3d 682, 684 n. 1 (Tex.2006) (orig. proceeding) (permitting supplementation of mandamus record under Rule 52.7 after real party in interest argued that relief should be denied for lack of transcript); *In re Houseman*, 66 S.W.3d 368, 373–74 (Tex.App.-Beaumont 2001, orig. proceeding) (holding relator's failure to provide record "cured" under Rule 52.7(b) by real party in interest's provision of record); *Woods v. Alvarez*, 925 S.W.2d 119, 121 (Tex.App.-Corpus Christi, orig. proceeding) (supplementing mandamus record *sua sponte* ), *mand. granted on other grounds, Bridgestone/Firestone, Inc. v. Thirteenth Court of Appeals*, 929 S.W.2d 440 (Tex.1996) (per curiam).

The cases cited by Relators focus on supplementation of the record before the appeal has been submitted for decision. *See, e.g., Crown Life Ins.*, 820 S.W.2d at 121; *Baker v. Trand, Inc.*, 931 S.W.2d 405, 407 (Tex.App.-Waco 1996, no writ); *Riggs v. Tech/III, Inc.*, 836 S.W.2d 302, 303 & n. 1 (Tex.App.-Dallas 1992, no writ). In this regard, we find a case cited by the Department more persuasive because it addresses supplementation after the appellate court has issued its opinion. *See K & S Interests, Inc. v. Tex. Am. Bank/Dallas*, 749 S.W.2d 887 (Tex.App.-Dallas 1988, writ denied).

In *K & S Interests*, the Dallas Court dismissed the appeal for want of jurisdiction because the order in question appeared to be a non-appealable interlocutory order. *Id.* at 891. After that decision, the appellant (like Relators here) filed a motion for rehearing contemporaneously with a motion to supplement the record. The appellant sought to supplement the record with additional documents to establish that the challenged order was appealable. *Id.* The court declined this request.

We recognize that Texas Rules of Appellate Procedure 55(b) and (c) grant this court wide discretion to supplement the transcript or statement of facts so as to include omitted matter. However, such discretion should not be exercised, in the absence of some unusual circumstance, so as to permit new material to be filed after the appellate court has written its opinion and rendered its judgment. Such action would be contrary to the spirit and purpose of Rules 54(a) (setting forth the appellate timetable) and 50(d) (placing the burden on appellant to see that a sufficient record is presented to show error requiring reversal) and

would interfere with the orderly administration of justice.

*Id.* at 891–92 (citations omitted).

We accept this "unusual circumstance" test as appropriate for evaluating Relators' request to supplement the record. *See Samples v. State*, No. 07–95–00193–CR, 1996 WL 740774, at *1, 1996 Tex.App. LEXIS 5773, at *2 (Tex.App.-Amarillo Dec. 20, 1996, pet. ref'd) (op. on reh'g) (not designated for publication); *Jackson v. S.P. Leasing Corp.*, 774 S.W.2d 673, 677–78 (Tex.App.-Texarkana 1989, writ denied) (op. on second motion for reh'g); *K & S Interests*, 749 S.W.2d at 891; *cf. Silk v. Terrill*, 898 S.W.2d 764, 765 (Tex.1995) (per curiam) (appellate court abused its discretion by denying motion to supplement record filed with motion for rehearing).

"Unusual circumstances" exist in this case because of the confluence between the interests at stake, the requirements of the appellate rules, and the deadlines imposed by the Family Code for state-initiated termination proceedings. *See Castaneda v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 509, 521 (Tex.App.-El Paso 2004, no pet.) (granting post-submission supplementation of record because of "the constitutional dimension of the parent-child relationship").

The Department (and the foster parents) seek to terminate the parent-child relationship. Relators seek to preserve a familial relationship with the child even if parental rights are terminated. The Family Code gives preference to relative placements when parental rights are terminated. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 268, § 1.33, 2005 Tex. Gen. Laws 621, 633 (amended 2009) (current version at Tex. Fam.Code Ann. § 262.114 (Vernon Supp. 2009)).[8] And the extended dismissal

---

8. The current version of this statute applies only to suits filed on or after September 1,

deadline (December 29, 2009) under section 263.401 is fast approaching. *Id.* § 263.401 (Vernon 2008). We hold that these are "unusual circumstances" which warrant supplementation of the record. *See Castaneda*, 148 S.W.3d at 521. Thus, we grant Relators' motion for leave to supplement the record, and we have filed and will consider Relators' supplemental mandamus petition.

Relators' counsel provided the following affidavit for verification of the mandamus petition:

> I am the attorney representing relators, Dolores and Lupe Cervantes, Olga Rubio, Michael Abelino and Ashli Michelle Cervantes, in this petition for Writ of Mandamus. I am licensed to practice law in the state of Texas. I have thorougly reviewed the Court's file in this matter. The facts stated in this affidavit are within my personal knowledge and true and correct.
>
> Attached to this affidavit are true and correct copies of the following [10] exhibits:

According to Rule 52.3(j), "The person filing the petition must certify that he or she has reviewed the petition and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record." Tex.R.App. P. 52.3(j).

Relators' counsel has made no effort to amend her affidavit though its deficiencies were identified by the Department and the foster parents two months ago. Nevertheless, given the exigencies at hand and the fact that the reporter's record is properly certified and the exhibits attached to the petition are adequately certified, we will disregard counsel's failure to comply with Rule 52.3(j). *See* Tex.R.App. P. 2; *In re*

*Cahill*, 267 S.W.3d 104, 106 (Tex.App.-Corpus Christi 2008, orig. proceeding); *Cronen v. Smith*, 812 S.W.2d 69, 70 (Tex.App.-Houston [1st Dist.] 1991, orig. proceeding).

### Standard of Review

■■■ The general standard of review in mandamus proceedings is well-established.

> Mandamus relief is proper to correct a clear abuse of discretion when there is no adequate remedy by appeal. A court of appeals improperly issues mandamus if the trial court did not abuse its discretion or if the record fails to demonstrate the lack of an adequate remedy on appeal.

*In re Dep't of Family & Protective Servs.,* 273 S.W.3d 637, 643 (Tex.2009) (orig. proceeding) (citations omitted).

■■■ When the issue turns on the trial court's interpretation of a statute, we review the ruling de novo. *Id.* at 642. "A trial court has no discretion in determining what the law is or properly applying the law. If the trial court fails to properly interpret the law or applies the law incorrectly, it abuses its discretion." *Id.* at 642–43 (citations omitted).

The predominant issue in this proceeding is whether Relators established standing to file a suit affecting the parent-child relationship. This issue turns on Respondent's interpretation of a statute, and thus we review his ruling de novo. *See In re Kelso*, 266 S.W.3d 586, 590 (Tex.App.-Fort Worth 2008, orig. proceeding); *In re Vogel*, 261 S.W.3d 917, 920–21 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding).

■■■ "We review the trial court's determination of a party's standing to file a

2009. *See* Act of May 27, 2009, 81st Leg., R.S., ch. 856, § 4, 2009 Tex. Sess. Law Serv.

2111–12(Vernon) (to be codified as an amendment of Tex. Fam.Code Ann. § 262.114).

SAPCR by construing the pleadings in favor of the petitioner and looking to the pleader's intent." *Kelso,* 266 S.W.3d at 589–90 (citing *In re M.J.G.,* 248 S.W.3d 753, 757 (Tex.App.-Fort Worth 2008, no pet.)); *accord Vogel,* 261 S.W.3d at 921.

> [W]e take as true all evidence favorable to the [intervenors] and indulge every reasonable inference and resolve any doubts in their favor. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 228 (Tex.2004). If the evidence creates a fact question regarding the standing issue, then the trial court must allow the issue to be resolved by the fact finder. *See id.* However, if the relevant evidence is undisputed or fails to raise a fact question on the standing issue, then the [intervenors] do not have standing to sue as a matter of law. *See id.*

*M.J.G.,* 248 S.W.3d at 758.

### Section 102.003(a)(10)

■ Dolores and Lupe claim standing under section 102.003(a)(10) of the Family Code. That statute provides in pertinent part that a SAPCR may be filed by "a person designated as the managing conservator in a revoked or unrevoked affidavit of relinquishment under Chapter 161." TEX. FAM.CODE ANN. § 102.003(a)(10) (Vernon Supp. 2009). Respondent ruled that Dolores and Lupe failed to establish standing because the father "James's" affidavit of relinquishment was not made knowingly and voluntarily. Dolores and Lupe contend in their second issue that Respondent abused his discretion by so ruling.

James testified that he understood, even if Dolores and Lupe became his child's managing conservators, he "could not legally force [them] to allow [him] to see his child" if his rights were terminated. He testified that he understood he may never see his child again if Respondent accepted the relinquishment affidavit. But James also testified that he believed he had a right to see his child even after signing the affidavit. He testified that he understood the affidavit was irrevocable. When he signed the affidavit, he thought he may "be able to get [his] rights back." He thought he would continue to have visitation rights after signing. He testified that, when he signed the affidavit, he wanted Dolores and Lupe to raise his child if his rights were terminated. He explained, "I want my child to go with [Dolores and Lupe], and I would like to be able to visit him as much as possible." When Respondent personally questioned James about his understanding, James stated that he believes he "should have ongoing rights" to visit his child even after signing the affidavit.

James's testimony could be interpreted in at least three ways. First, as Respondent essentially found, he harbors an erroneous belief that he will still possess legal rights with regard to the child even if his rights are terminated. Second, he believes he should have continuing access to the child and disagrees with the law on this subject. Or third, he fully understands the legal effects of the relinquishment affidavit but harbors the hope that he will still be given access.

The Department relies on cases which stand for the proposition that termination of parental rights cannot be based on an involuntarily executed relinquishment affidavit.[9] *See Jones v. Tex. Dep't of Protective & Regulatory Servs.,* 85 S.W.3d 483, 495 (Tex.App.-Austin 2002, pet. denied); *In re V.R.W.,* 41 S.W.3d 183, 192–93 (Tex.

---

9. The Department also argues that James's affidavit is involuntary because he did not consult with his guardian ad litem before signing it. However, it does not appear from the record that Respondent rejected the affidavit on this basis.

App.-Houston [14th Dist.] 2001, no pet.); *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex.App.-Austin 2000), *pet. denied*, 53 S.W.3d 684 (Tex.2001) (per curiam). Dolores and Lupe respond that a different standard should apply when reviewing an affidavit for standing than when reviewing an affidavit for termination. We agree. *See Vogel*, 261 S.W.3d at 922 n. 5 ("[S]tanding to sue does not mean a right to win, but merely a right to be heard in court.") (citing *In re S.S.J.-J.*, 153 S.W.3d 132, 138 (Tex.App.-San Antonio 2004, no pet.)).[10]

Dolores and Lupe rely on *Lumbis v. Texas Department of Protective and Regulatory Services*, 65 S.W.3d 844 (Tex.App.-Austin 2002, pet. denied), to support their position that James's affidavit was voluntarily made, even if he hoped or believed he would continue to have access to his child. The facts of *Lumbis* appear closer to the facts of this case than do the facts presented in the cases relied on by the Department and the foster parents.

The Department told Lumbis it would *try* to arrange an open adoption whereby Lumbis *might* be able to have post-adoption contact *if* the adoptive parents so agreed. That Lumbis believed she would be able to convince the adoptive parents to allow her to maintain contact does not render her decision involuntary. Lumbis was represented by counsel throughout the process. She understood the meaning of "irrevocable," and discussed the relinquishment extensively with her attorney before she signed it. Lumbis was not misled into believing that she was guaranteed post-adoption contact, as was the case in *Vela*. Everything in the affidavit and termination

order concerning any continuing contact with the children relates only to contact up to the time of their adoption, not after. There is no evidence that Lumbis was guaranteed an open adoption or that the adoptive family would comply with Lumbis's wishes to stay in contact with her children. On the contrary, Lumbis admitted she knew any post-adoption contact would depend on the adoptive parents' consent.

*Id.* at 850.

We need not and do not decide whether James's relinquishment affidavit was sufficiently voluntary as to support termination of his parental rights. *See Vogel*, 261 S.W.3d at 922 n. 5; *S.S.J.-J.*, 153 S.W.3d at 138. That James believed he should or would be allowed to maintain contact "does not render [his] decision involuntary," certainly not for purposes of determining whether he has designated Dolores and Lupe as managing conservators in the event his parental rights are terminated—which is the test for standing under section 102.003(a)(10). *See Lumbis*, 65 S.W.3d at 850–51; *see also* Tex. Fam.Code Ann. § 102.003(a)(10).

Thus, we sustain Dolores's and Lupe's second issue and hold that Respondent abused his discretion by finding that James's relinquishment affidavit was not adequate under section 102.003(a)(10) to confer standing on them.

### Section 102.004(a)(2)

 Olga, Michael and Ashli claim standing under section 102.004(a)(2) of the Family Code which provides in pertinent part that a "relative of the child within the third degree by consanguinity" may file a SAPCR "if there is satisfactory proof to

---

**10.** The original source for this quotation is a 1993 report by the Family Law Section of the State Bar. *See Doncer v. Dickerson*, 81 S.W.3d 349, 356 (Tex.App.-El Paso 2002, no pet.) (quoting John J. Sampson, Vol. 93–2 <span>State Bar of Texas Section Report—Family Law</span> 14 (1993)).

the court that ... both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit." TEX. FAM.CODE ANN. § 102.004(a)(2) (Vernon Supp. 2009).

They contend in their first issue that Respondent erred by ruling that the parents must "jointly" consent to suit to establish standing under this statute.[11] They contend in their fifth issue that Respondent erred by excluding the testimony of the guardian ad litem for the mother Ophelia on the issue of her consent.

In his oral rulings, Respondent stated, "I do not believe that there has been evidence that has been presented to show that both parents jointly consented to filing the petition or consenting to the suit. I think there continues to be a question regarding the competency of [Ophelia]."

With regard to the idea of "joint" consent, it is not entirely clear from the record that this is what Respondent meant by his comment. But to remove any doubt, we hold that section 102.004(a)(2) plainly requires the consent of "both parents," but the statute does not require that parents give their consent "jointly."

James testified at the hearing that he consented to Olga's, Michael's and Ashli's petition for managing conservatorship. *See In re A.M.S.*, 277 S.W.3d 92, 98 (Tex. App.-Texarkana 2009, no pet.) (oral consent is sufficient even if given after the petition is filed). The Department does not dispute that oral consent may be sufficient but argues instead that Respondent had the discretion to choose not to believe James's testimony on this issue. *See, e.g.,*

*Garner v. Garner,* 200 S.W.3d 303, 308 (Tex.App.-Dallas 2006, no pet.) ("As the fact finder, the trial court had the discretion to disbelieve appellant's testimony and was not required to accept appellant's evidence of his income and net resources as true.").

When a trial court sits as finder of fact, the court certainly has the discretion to disbelieve a witness's testimony. *Id.* When a court is deciding the issue of standing however, it's discretion in this regard is limited. The court must "take as true all evidence favorable to the [petitioners] and indulge every reasonable inference and resolve any doubts in their favor." *M.J.G.,* 248 S.W.3d at 758 (quoting *Miranda,* 133 S.W.3d at 228); *see Kelso,* 266 S.W.3d at 590 ("even considering the evidence in the light most favorable to the [petitioners], the evidence does not [establish standing]").

On the issue of standing, the court has no discretion to disbelieve the testimony of a witness favorable to the party asserting standing but rather must accept such testimony as true. *Id.* Thus, Respondent had no discretion to reject James's testimony regarding his consent to Olga's, Michael's and Ashli's petition.

With regard to Ophelia's consent, Olga, Michael and Ashli attempted to rely on the testimony of Ophelia's guardian ad litem Janet Traylor and an unsworn "affidavit" Ophelia executed. The Department and the foster parents objected to Traylor testifying on Ophelia's behalf regarding the issue of consent. Under questioning by Respondent, Traylor stated that Ophelia

---

11. As earlier noted, Respondent also found that Olga, Michael and Ashli had failed to establish standing because there was no evidence or claim under section 102.004(a)(1) that "the child's present circumstances would significantly impair the child's physical health or emotional development." *See* TEX. FAM. CODE ANN. § 102.004(a)(1) (Vernon Supp. 2009). However, subsections (1) and (2) of section 102.004(a) are stated disjunctively. *Id.* § 102.004(a). Thus, Olga, Michael and Ashli had to show either "significant impairment" under (1) or parental consent under (2) (but not both) to establish standing.

was then at the Vernon State Hospital because she had been found not guilty of a crime by reason of insanity. She explained that this verdict related to her mental status at the time of the offense and not at the time of trial or afterward when Traylor discussed the termination suit with her. After hearing this testimony, Respondent informed the parties that he would not permit Traylor to testify.

Nevertheless, Respondent permitted Olga, Michael and Ashli to make an offer of proof. Traylor testified that Ophelia consented to Olga's, Michael's and Ashli's suit. Regarding Ophelia's competence, Traylor testified that Ophelia had initially been found by the criminal court to be incompetent to stand trial. She was later found competent and at trial was found not guilty by reason of insanity. Traylor explained that a criminal defendant who is found not guilty by reason of insanity for an offense involving dangerous conduct must be committed for no more than thirty days after trial for an evaluation of the defendant's present mental condition. *See* Tex.Code Crim. Proc. Ann. art. 46C.251 (Vernon 2006).

Traylor and Ophelia's attorney went to visit her two days before the hearing. They had a lengthy discussion with her about the termination suit and Relators' efforts to intervene. Based on her experiences as an attorney (as prosecutor, defense attorney, CPS attorney, and attorney ad litem), Traylor opined that Ophelia was competent and fully understood their conversation and the statement she signed consenting to Relators' intervention. In the statement, Ophelia unequivocally consented to Olga's, Michael's and Ashli's suit.

The Department and the foster parents contend that Relators have failed to preserve the admissibility of Traylor's testimony or Ophelia's statement because they did not object when Respondent informed the parties that he would not permit Traylor to testify. To the extent preservation is required in this regard, we disagree. Rule of Evidence 103(a)(2) provides that a party must make an offer of proof to complain on appeal of a ruling excluding evidence. Tex.R. Evid. 103(a)(2). Relators did so in this instance.

Respondent informed the parties that he would not permit Traylor to testify after Ophelia's attorney explained her then-current status with Vernon State Hospital. Nevertheless, lay testimony is admissible on the issue of a person's capacity to sign a legal document. *See Yancy v. United Surgical Partners Int'l, Inc.,* 236 S.W.3d 778, 782 n. 5 (Tex.2007) ("testator's mental condition on [date will signed] may be determined from lay opinion testimony") (quoting *Lee v. Lee,* 424 S.W.2d 609, 611 (Tex.1968)). Respondent should have accepted Traylor's testimony regarding Ophelia's competence as true. *See M.J.G.,* 248 S.W.3d at 758; *see also Kelso,* 266 S.W.3d at 590. Thus, Respondent abused his discretion insofar as he refused to permit Traylor to testify about Ophelia's competence to sign the statement of consent. Respondent likewise should have accepted Ophelia's statement of consent as true. *Id.*

Olga, Michael and Ashli presented evidence that James and Ophelia both consented to their suit for managing conservatorship. It is undisputed that Olga, Michael and Ashli are related to the child within the third degree of consanguinity. *See* Tex. Gov't Code Ann. § 573.023 (Vernon 2004). Thus, we sustain their first and fifth issues[12] and hold that Respondent abused his discretion by finding that James's and Ophelia's consent was not

---

12. We do not reach the remainder of the issues presented.

adequate under section 102.004(a)(2) to confer standing.

## Adequate Remedy

Relators must also show that they have no adequate remedy by appeal. *Dep't of Family & Protective Servs.*, 273 S.W.3d at 643. Here, given the competing interests which we have already described and the statutory time limits, we hold that Relators do not have an adequate remedy by appeal. *See id.* at 645; *Kelso,* 266 S.W.3d at 591.

## Conclusion

Respondent granted the Department's plea to the jurisdiction "and d[id] strike [Relators'] pleadings." Relators contend that Respondent abused his discretion by striking their pleadings and by denying their motion to consolidate their suit with the Department's. However, Respondent never ruled on the motion to consolidate because he struck Relators' pleadings.

In Relators' prayer for relief, they ask that we issue a writ (1) commanding Respondent to vacate the order striking their pleadings and (2) ordering Respondent to consolidate the lawsuit. Because Respondent never ruled on the motion to consolidate, we do not address the propriety of consolidation.

We conditionally grant the requested writ in part. A writ will issue only if Respondent fails to advise this Court in writing before 5:00 p.m. on Friday, November 13, 2009 that he has vacated his order granting the Department's plea to the jurisdiction. We further lift the stay issued October 8, 2009.

Chief Justice GRAY dissenting.

Justice DAVIS concurs in the decision to grant rehearing. The decision to grant leave to supplement the record, and the judgment conditionally granting mandamus relief. He does not join Justice REYNA's opinion on rehearing.

TOM GRAY, Chief Justice, dissenting on rehearing (and the orders imbedded therein).

The liberal recognition of exceptions to our Rules of Procedure and Evidence used by the Court creates the equivalent of private rules and unequal treatment for the litigants in this proceeding. In fact, the Court has so far departed from the Rules that we have ignored the distinctions in the two proceedings filed in the trial court.

I do not have the time to explain all the missteps and misques the Court[1] has taken, but I will try to comment upon the more egregious ones.

There were two proceedings filed in the trial court. I will refer to them as the State's case and the Interlopers' case. The State's case was filed on June 27, 2008, to terminate the parental rights of Mary and Frank (pseudonyms for mother and father) as to Carl (another pseudonym), their child. This suit bears cause number 76,744–CCL.

The time within which the statute requires that the trial for this proceeding commence is a maximum of 18 months from the date it was filed. Many months

---

1. The term "Court" as used herein may be technically incorrect. The Opinion on Rehearing is the opinion of only Justice Reyna; but the result reached therein is joined by Justice Davis without joining the opinion. As such, the opinion has no precedential value. There are other procedural issues but due to the pressure of time, I will not elaborate on all of them.

went by and the matter appeared to be on track for a timely disposition. Even when the Fosters (pseudonym) intervened in the State's case on February 13, 2009, because they wanted to be more than foster parents, there was no reason to expect the proceeding would be delayed.

Then in March 2009, many months after the State's case was filed, with the assistance of Mary and Frank, five relatives of Mary or Frank, all with some distant family connection to Carl, attempted to intervene in the State's case and took the position it is in Carl's best interest that one or more of them should be appointed managing conservator of Carl.

The trial court denied their plea in intervention in early June 2009. Undaunted, the five decide to use a different tact. Almost two months after the court denied their intervention in the State's case, they filed a new and separate suit affecting the parent child relationship, the Interlopers' case, and sought to have it consolidated with the State's case. The Interlopers' case was filed as cause number 79,062–CCL. The motion to consolidate was filed in the State's case.

Interestingly, the State and the Fosters went into the Interlopers' case and argued on separate grounds that none of the five relatives had standing to file the Interlopers' case, a SAPCR (Suit Affecting Parent Child Relationship).

In a hearing held on August 7, 2009, erroneously referred to by the trial court as occurring in the State's case, the trial court determined that none of the five relatives had standing and struck the petition in the Interlopers' case. Not yet willing to throw in the towel, the five relatives filed a petition for writ of mandamus from the Interlopers' case and a notice of appeal in the State's case on August 12, 2009. This proceeding is a purported mandamus of the striking of the petition, the SAPCR, filed by the five relatives, in the Interlopers' case.

The Court requested a response and stayed the trial court proceeding. Therein this Court made its first two errors that have plagued the Court, the parties, and the trial court. When this Court requested a response to the petition for writ of mandamus, that request was in regard to the striking of the petition, the SAPCR, filed in the Interlopers' case. However, the striking of that petition was a final judgment that ended that proceeding in the trial court. As such, there was no need to proceed by mandamus because a direct appeal was immediately available.

The other error the Court made was in granting an emergency stay of the State's case. We had no authority to stay the trial court proceedings in the State's case, a suit from which a petition for writ of mandamus had not been filed.

The Court almost overcame the effect of these two errors. After unnecessarily requesting a response, the Court denied the petition for writ of mandamus on September 23, 2009 in the Interlopers' case and lifted the stay in the State's case. The reason for the denial was because the five relatives, the petitioners, had failed to provide an authenticated transcript containing the oral order striking the petition for intervention in the Interlopers' case. Apparently, no written order has been signed.

But just when it appeared things were about to get back on track in the State's case, the Court shot itself in the foot when a majority granted a motion for rehearing because the reporter's record had become available. The Court has ignored the fact that the record was not even requested until two days *after* the Court issued its opinion denying the petition for writ of mandamus. I voted to deny the motion

for rehearing. The Court requested a response to the motion for rehearing and, later, again erroneously, stayed the State's case from proceeding to trial.

The Court finally received the reporter's record on October 5, 2009. A motion to supplement the mandamus record and a supplemental petition for writ of mandamus were filed on October 16, 2009.

This brings us to the Court's opinion, now granting relief on the petition for writ of mandamus. The Court struggles to overcome the numerous legal hurdles to granting relief. A partial listing is as follows:

1. Overcoming the late-filed record;

2. Overcoming uncorrected procedural deficiencies in the petition that were pointed out by the real parties in interest;

3. Using the standard of review in a manner that eliminates the trial court's role as a fact finder;

4. Reliance on an offer of proof that was never offered (and it was not made until after the trial court had ruled);

5. Ignoring the total failure to pursue the direct appeal, which could have, if properly pursued, accorded the same relief the Court purports to order by mandamus, thus ignoring the standard for issuance of a writ of mandamus; and

6. Ignoring the waiver of the very claim on which relief is being granted in this proceeding by the relatives having failed to pursue relief from the earlier denial of their plea in intervention filed by the five relatives in the State's case, by either a petition for writ of mandamus or pursuit of the direct appeal they filed at the same time they filed this mandamus proceeding.

I note the only "unusual circumstance" in this proceeding for not having the reporter's record was that it is unusual that the party needing the record for a mandamus proceeding did not even request it until two days after the Court's opinion was issued denying the petition for writ of mandamus. That is hardly the type "unusual circumstance" that should justify late supplementation of the record. This is particularly true when the real party in interest and the Court had pointed out the deficiency and given the parties time to correct it before the opinion denying relief was issued.

### CONCLUSION

I would deny the motion for rehearing leaving our prior unanimous opinion denying the petition for writ of mandamus undisturbed. Because the Court orders relief, I respectfully dissent.

