# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00419-CV

---

**M. B. and C. J., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE 146TH DISTRICT COURT OF BELL COUNTY
### NO. 23DFAM337971, THE HONORABLE DALLAS SIMS, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

M.B. (Mother) and C.J. (Father) appeal from the trial court's "Order Appointing Managing Conservator" concerning Mother and Father's children, Gary and Mark.[1]  Following a final hearing, the trial court appointed the children's paternal grandmother (Grandmother) as sole managing conservator and Mother and Father as possessory conservators of the children with a minimum of one hour of monthly supervised visitation for each parent.  For the following reasons, we affirm the trial court's order.

## BACKGROUND

Gary was born in 2015, Mark was born in 2016, and both children have special needs and are autistic.  Father and Mother were in a relationship that continued until around 2023.  In 2015, 2016, and 2020, Mother and Father were referred to Family Based Safety

---

[1] We refer to the parents and other family by their initials or their relation to the children and refer to the children by aliases.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

Services because of concerns with domestic violence. Mother was arrested multiple times for assaulting Father, including when she was pregnant with Gary. During the time that they were in a relationship, Mother's criminal history included multiple convictions for assault, a conviction for felony robbery, and incarceration multiple times including one nine-month period.

In November 2021, the trial court signed an agreed order in a suit affecting parent-child relationship concerning the children. Father had filed suit against Mother seeking custody of the children. In its order, the trial court appointed Father as sole managing conservator and Mother as possessory conservator. As to Mother's possession of the children, the trial court found that "credible evidence has been presented that there is a history or pattern of family violence committed by [Mother]" and, therefore, ordered that her possession of the children was required to be limited to three-hour supervised visits on the first, third, and fifth Saturdays of each month. Shortly after the trial court signed the order, Mother began living with Father and the children again and continued living with them until shortly before the children were removed in this case.

In 2023, the Department received two intakes raising concerns of physical abuse and neglect of Mark by Father. The allegations included that Mark made an outcry that Father "punched him in the face," that Mark "often" came to school with bleeding diaper rashes,[2] and that he had arrived at school with "handprint marks on his arms" and "various cuts and abrasions on his body and face." The Department's concerns for the children's safety included Mother and Father's lack of stability, unemployment, and inability to care for the children; Mother's untreated mental-health problems including continuing problems with "managing life stresses";

---

[2] The evidence was that the children, who were seven and eight, were not potty trained and wore pull-ups.

and domestic violence between Mother and Father in front of the children. In the two years preceding the Department's investigation, there had been "nine calls to law enforcement" regarding "family violence" between Mother and Father.

Following its investigation, the Department sought to be and was appointed temporary managing conservator of the children. Within a few months, the children were placed with Grandmother. Mother and Father also were court-ordered to comply with family service plans and allowed one-hour supervised visits with the children weekly.

The final hearing before the trial court occurred on February 8 and April 11, 2024. The trial court took judicial notice of its file; the Department's witnesses were the caseworker, Grandmother, and Mother; Mother's witnesses were her therapist and her fiancé; and Father testified on his own behalf. At the time of the final hearing, Mother and Father were no longer in a relationship, Mother was living with her fiancé, Father had criminal charges pending against him for allegedly assaulting Mother in September 2022, and Mother remained on probation for her robbery conviction. Mother testified that when the children were about one and two, she robbed a Dollar General.

The exhibits admitted during the final hearing included the removal affidavit, the family service plans for Mother and Father, and their psychological evaluations. The evidence showed that Mother had complied with some of the tasks in her service plan, participated in counseling, and provided toys and clothes for the children but that during her visits with the children, they "demonstrate[d] aggressive behavior towards [her]."

The Department sought for Grandmother to be appointed the sole managing conservator of the children with no designation for Mother and Father, and the guardian ad litem agreed with the Department, advising the trial court that it was in the children's best interest to

3

continue to be with Grandmother and to leave it up to her to decide visitation between Mother and Father and the children. The caseworker also testified that placing the children with Grandmother was in their best interest and that visits between Mother and the children going forward should be at Grandmother's discretion. The caseworker explained that Mother had not complied with her service plan to the extent that the caseworker would feel comfortable having the children returned to her care.

The evidence was undisputed that Grandmother was meeting the children's needs, they were doing well in her care, and they had "improved tremendously." During her testimony, Grandmother confirmed that she was willing to raise the children and to supervise visits between the parents and the children going forward. She believed that she could decide whether and when it would be safe for the children to be unsupervised by their parents and that she could make that decision keeping the children's best interest in mind. Grandmother also testified about her concerns if the children were returned to Mother and agreed that Mother and Father had "been off-again, on-again for most of their lives," that they had been incarcerated for assaulting each other, and that "it didn't stop in nine years." She further testified that although the children did not always tell the truth, they told her that Mother hit them.

Mother requested that the trial court return the children to her care or that they stay with Grandmother if the choice was between Grandmother and Father. Mother agreed that she did not have a healthy relationship with Father and that she had allowed Father to have the children when he sought custody of them because she was not able to care for them but testified that she was now ready to take care of the children and that her fiancé was willing for the children to live with them. Although Mother's fiancé had not had contact with the children, he testified that he was employed, that he would be able to provide for Mother and the children, that

4

he was willing to raise the children, and that he had no concerns with Mother being alone with the children.

Mother's therapist, who had been counseling Mother for around six months, also did not have concerns with the children being placed with Mother or Mother being allowed unsupervised visits. The therapist testified that Mother loved her children, that they were a priority for Mother, and that she had no concerns with the children's safety and health if they were placed with Mother or if Mother was allowed unsupervised visits. The therapist believed that Mother had changed and made progress, although the therapist testified that Mother was "not all of the way there" in terms of her therapeutic progress and acknowledged the concerns raised in Mother's psychological evaluation of "mental health problems and continued problems in managing life stresses," lack of stability, and inability "to take care of her children due to the severity of her problems." The therapist also confirmed that Mother had admitted to inappropriately disciplining the children.

Father requested that the children be placed with him or, if they were not placed with him, that they be placed with Grandmother, as he believed that Grandmother was able to make good decisions regarding the children's safety. He testified that prior to this case, he was the primary caregiver for the children but that he tried to work with Mother when she "was not locked up or had not left [them]"; that when she was around, the children did not want to be around her; that the children would hit, slap, and spit on her, "which [was] a lot of the things that she had done to [him]"; and that when he was staying with her, she was "just mentally unstable." He described being assaulted by Mother and their relationship of "nine years of just so much drama and so much police and CPS." He was concerned for the children to be returned to Mother because of her "physical abuse" towards him in front of the children, which caused them

5

"mental problems"; he described her as angry and "volatile and abusive"; he testified that she had "never been able to take care of [the children]"; and that he "was scared for the life of [his children]."

Following the hearing, the trial court signed the order finding that "there has been a material change in circumstances in the lives of the children and their conservators that necessitates a modification of the Court's orders," *see* Tex. Fam. Code § 156.101 (stating when trial court may modify order establishing conservatorship or possession and access), and appointed Grandmother as the sole managing conservator of the children and Mother and Father as possessory conservators. The trial court found that the appointment of either parent as the managing conservator "would not be in the best interest of the children because the appointment would significantly impair the children's physical health and emotional development" and that its court-ordered visitation schedule was "the least restrictive for each parent [to] ensure the safety of the children." As to Mother's periods of possession, the court ordered "supervised visits or access to the children no less than the first Saturday following the first Friday of each month . . . for the hour from 12pm [to] 1pm at a location designated by [Mother] within 10 miles of the children's home."

Mother's and Father's appeals followed.

## ANALYSIS

### Father's Appeal

On appeal, Father's court-appointed attorney has filed a brief concluding that his appeal is frivolous and without merit. *See Anders v. California*, 386 U.S. 738, 744 (1967); *Taylor v. Texas Dep't of Protective & Regul. Servs.*, 160 S.W.3d 641, 646–47 (Tex. App.—

6

Austin 2005, pet. denied) (applying *Anders* procedure in appeal from termination of parental rights). The brief meets the requirements of *Anders* by presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced on appeal. *See* 386 U.S. at 744; *Taylor*, 160 S.W.3d at 646–47. Father's attorney has certified to this Court that she provided a copy of the *Anders* brief to Father and informed him of his right to examine the appellate record and to file a pro se brief. To date, Father has not filed a pro se brief.

Upon receiving an *Anders* brief, we must conduct a full examination of the proceedings to determine whether the appeal is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80 (1988). We have reviewed the entire record, including the *Anders* brief submitted on Father's behalf, and have found nothing that would arguably support an appeal. We agree that Father's appeal is frivolous and without merit.

**Mother's Appeal**

In two appellate issues, Mother contends that the trial court abused its discretion by not appointing her as a managing conservator and by reducing her visitation from six hours per month under the prior orders to one hour per month "without any explanation or justification."

*Standard of Review*

"We review a trial court's decision to modify conservatorship for an abuse of discretion." *Johnson v. Kimbrough*, 681 S.W.3d 430, 439 (Tex. App.—Austin 2023, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied)); *see In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (explaining that conservatorship determinations "are subject to review only for

7

abuse of discretion"). "The test for abuse of discretion is whether the trial court acted in an arbitrary and unreasonable manner or whether it acted without reference to any guiding principles." *Johnson*, 681 S.W.3d at 439 (citing *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.)); *see In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021) (explaining that trial court abuses its discretion when it rules arbitrarily or unreasonably or without regard for guiding rules or principles). "Generally, a trial court does not abuse its discretion if the record contains some evidence of a substantive and probative character to support its decision on modification of conservatorship." *Johnson*, 681 S.W.3d at 439 (citing *Zeifman*, 212 S.W.3d at 589).

In this context, legal and factual sufficiency are not independent grounds of error but are factors used to determine whether the trial court abused its discretion. *A.S. v. Texas Dep't of Fam. & Protective Servs.*, 665 S.W.3d 786, 795 (Tex. App.—Austin 2023, no pet.) (citing *Zeifman*, 212 S.W.3d at 587). Under this standard, we determine "whether the trial court had sufficient information on which to exercise its discretion and, if so, whether the trial court erred in its application of discretion." *Id.* (citing *Zeifman*, 212 S.W.3d at 588). We employ traditional sufficiency review to answer the first question. *Id.* If the evidence is sufficient, we "determine whether, based on the evidence, the trial court made a reasonable decision, that is, that the court's decision was neither arbitrary nor unreasonable." *Id.*

*Managing Conservator*

In her first issue, Mother argues that the trial court should have appointed her managing conservator because the Texas Family Code presumes that she should be designated a

managing conservator, that the evidence did not rebut that presumption, and that the *Holley* factors support the presumption.

Mother relies on the presumption in Section 153.131 of the Texas Family Code that "a parent shall be appointed sole managing conservator" unless a court finds that the appointment would not be in the best interest of the child "because the appointment would significantly impair the child's physical health or emotional development." Tex. Fam. Code § 153.131(a). This presumption, however, generally applies to an initial determination of conservatorship, and the order in this case modifies the initial order between Mother and Father appointing him as sole managing conservator and her as a possessory conservator of the children. *See In re C.J.C.*, 603 S.W.3d 804, 807, 819 (Tex. 2020) (stating that statutory presumption governing original custody determinations "is not carried forward into the statute governing proceedings to modify those determinations" and clarifying that only parent who was appointed as managing conservator in original order retains presumption in modification suit). "The modification statute reflects the understanding that 'the first judgment at the time it was entered was res judicata of the question of the child's best interest and of the custody.'" *Id.* at 818 (quoting *Taylor v. Meek*, 276 S.W.2d 787, 790 (Tex. 1955)); *see Johnson*, 681 S.W.3d at 440 (explaining that "presumption does not apply in a modification proceeding with respect to a parent who was not appointed managing conservator in the order [sought to be modified]"). Thus, because Mother was not appointed a managing conservator in the trial court's initial order determining conservatorship for the children, the presumption does not apply with respect to her.

Because the presumption does not apply with respect to Mother, the Department's burden was to prove by a preponderance of the evidence that the circumstances of the children, a conservator, or other party affected by the initial conservatorship order had materially and

9

substantially changed and that modification was in the children's best interest. *See* Tex. Fam. Code § 156.101(a); *Johnson*, 681 S.W.3d at 439 (stating that "party seeking modification must establish these elements by a preponderance of the evidence"); *In re Vogel*, 261 S.W.3d 917, 923 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) (explaining that in modification proceeding "in which the parental presumption does not apply," movant "need demonstrate only that modification would be in [the child's] best interest and that the circumstances have 'materially and substantially changed' since the [] custody order" (quoting Tex. Fam. Code § 156.101)). Mother does not challenge the trial court's finding of a material and substantial change, and to the extent that she challenges the trial court's finding that the modification was in the children's best interest, we cannot conclude that the trial court abused its discretion.

Relevant factors in assessing the best interest of a child include: (i) the desires of the child, (ii) the stability of the home or proposed placement, (iii) parental abilities, (iv) the emotional and physical needs of the child now and in the future, (v) the emotional and physical danger to the child now and in the future, (vi) the plans for the child by the individual or agency seeking custody, (vii) the programs available to assist the individuals seeking custody to promote the best interest of the child, (viii) acts or omissions by the parent showing that the parent-child relationship was not proper, and (ix) any excuses for the parent's conduct. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* Tex. Fam. Code §§ 153.002 ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."), 263.307 (stating that "prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest" and listing factors that court should consider "in determining whether the child's parents are willing and able to provide the child with a safe environment").

10

Mother argues that the evidence "was insufficient to designate Mother anything other than a managing conservator"; discounts the evidence of domestic violence between her and Father because "that was in the past, before the case began"; and as to the *Holley* factors, argues that the evidence showed that she "could provide for the children's needs now and in the future" and that she "has taken responsibility for her mistakes in the past and is working to address them." There was evidence that Mother had made progress and would be able to care for the children if they were returned to her, including testimony from her therapist, Mother, and her fiancé that she provided toys and clothes to the children, visited with them weekly, was patient with them when they were acting inappropriately during visits, did not abuse drugs or engage in criminal activity after the case began, was no longer in a relationship with Father, and was in a stable relationship free of domestic violence.

The trial court, however, as the factfinder and "the sole judge of credibility of the witnesses and the weight to be assigned to their testimony," was "free to believe one witness and disbelieve another." *In re L.K.S.*, No. 09-23-00364-CV, 2024 Tex. App. LEXIS 5879, *16 (Tex. App.—Beaumont Aug. 15, 2024, no pet.) (mem. op.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)); *see Silverman v. Johnson*, No. 03-08-00271-CV, 2009 Tex. App. LEXIS 7176, at *30–31 (Tex. App.—Austin Aug. 26, 2009, no pet.) (mem. op.) (observing that it is factfinder's role "to resolve evidentiary conflicts and determine the weight and credibility of the witnesses" and that factfinder's role "cannot be overstated," particularly in custody disputes, as "'[s]uits affecting the parent-child relationship are intensely fact driven'" (quoting *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002))). Thus, the trial court did not have to believe the witnesses who testified that Mother was ready and able to safely care for the children and could have credited contrary evidence including that Mother had been convicted of felony

11

robbery and multiple assaults of Father, that she had abused the children and exposed them to domestic violence for most of their lives prior to their removal, that she was unemployed, and that she was unstable and "volatile" to reasonably find that the children would not be safe in her care. Father, Grandmother, and the caseworker testified about their concerns for the children's safety if they were returned to Mother, and although the therapist testified that she did not have concerns with Mother taking care of the children, she also testified that Mother was "not all of the way there" in terms of her therapeutic progress and acknowledged the concerns raised in Mother's psychological evaluation of "mental health problems and continued problems in managing life stresses," lack of stability, and inability "to take care of her children due to the severity of her problems."

Because there is some evidence of a substantive and probative character to support the trial court's finding that its modification of the initial conservatorship order was in the children's best interest, we conclude that the trial court did not abuse its discretion when it appointed Grandmother—and not Mother—as managing conservator of the children. *See In re J.A.J.*, 243 S.W.3d at 616; *Johnson*, 681 S.W.3d at 439. We overrule Mother's first issue.

*Possession and Access*

In her second issue, Mother argues that: (i) the same evidence showing that she should have been appointed managing conservator shows that she should have standard possession; (ii) even if her visitation should be less than the standard possession order, there is no justification in the record for it to be less than it was before the order appointing Grandmother as the managing conservator; and (iii) the reduction from six hours in the initial conservatorship

12

order to one hour of visitation "without explanation or justification is arbitrary and unreasonable."

"There is a rebuttable presumption that the standard possession order provides the reasonable minimum level of possession and access for a parent named possessory conservator and is in the best interest of the child." *In re J.J.R.S.*, 627 S.W.3d at 218 (citing Tex. Fam. Code § 153.252). "When determining whether to deviate from the standard possession order, a court may consider '(1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor.'" *Id.* (quoting Tex. Fam. Code § 153.256). "[T]he terms of an order that deviates from the standard possession order—that is, an order that 'denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child'—'may not exceed those that are required to protect the best interest of the child.'" *Id.* (quoting Tex. Fam. Code § 153.193).

Mother argues that the trial court abused its discretion by ordering only one hour of visitation each month and relies on the evidence that she cited in her first issue; the original conservatorship order, which allowed her to have three hours of supervised visitation every other week; the evidence that she was actually having much more than the court-ordered visitation prior to this case; and the temporary orders in this case that allowed her weekly one-hour visitation. The original conservatorship order, however, limited Mother's possession to only supervised visitation for the specified hours each month in the order. In contrast, in the order appointing Grandmother as the managing conservator, the trial court ordered that Mother was entitled to a minimum of one hour of supervised visitation and then left additional visitation within Grandmother's discretion. In reaching its decision about Mother's visitation with the

13

children going forward, the trial court could have credited the evidence that the children did not want to be around Mother and that they acted aggressively toward her both before and after they were removed and Grandmother's testimony that she would supervise visits between the parents and the children going forward. Grandmother testified that she could decide whether and when it would be safe for the children to be unsupervised by Mother and Father and that she could make that decision keeping the children's best interest in mind.

Given the conflicting evidence about the children's safety in Mother's care and Mother's progress and improvement, we cannot conclude that the trial court abused its discretion by ordering that she have a minimum of one hour of supervised visitation each month and then leaving it up to Grandmother to determine additional visitation between Mother and the children going forward. *See id.* at 217–18 (concluding that "trial court did not abuse its discretion in vesting the managing conservators with complete discretion over Mother's access to the children"); *see also King v. King*, No. 03-22-00329-CV, 2023 Tex. App. LEXIS 3908, at *32–33 (Tex. App.—Austin June 8, 2023, no pet.) (mem. op.) ("Supervised visitation is a reasonable condition to be ordered to address potential safety concerns."); *J.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-12-00670-CV, 2013 Tex. App. LEXIS 4390, at *23–24 (Tex. App.—Austin Apr. 3, 2013, no pet.) (mem. op.) (explaining that appellate courts "give wide latitude to a trial court's decision on custody, control, possession, and visitation matters").

Further, to the extent that Mother complains that the trial court abused its discretion by not explaining the reasons for its visitation order, Mother has not cited, and we have not found, where in the record she asked the trial court to do so. A trial court is required to state its specific reasons for a variance from a standard possession order only "on request by a

14

party." Tex. Fam. Code § 153.258(a). Thus, we cannot conclude that the trial court abused its discretion to the extent that it did not explain its reasons for the visitation that it ordered.

For these reasons, we conclude that Mother has failed to show that the trial court abused its discretion in its visitation orders and overrule her second issue.

## CONCLUSION

Having found that Father's appeal is frivolous and without merit and having overruled Mother's appellate issues, we affirm the trial court's order appointing conservator.[3]

_____

Rosa Lopez Theofanis, Justice

Before Justices Triana, Kelly, and Theofanis

Affirmed

Filed: November 5, 2024

---

[3] We also deny the pending motion to withdraw by Father's attorney. *See In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (per curiam). If Father, after consulting with counsel, desires to file a petition for review, his counsel should timely file with the Texas Supreme Court "a petition for review that satisfies the standards of an *Anders* brief." *See id.* at 27–28.