Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


★ ★ ★  ★ ★ ★

## OPINION

No. 04-11-00758-CV

**IN RE** Michelle **CHESTER**

Original Mandamus Proceeding[1]

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Sandee Bryan Marion, Justice
Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed:  December 28, 2011

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

On October 18, 2011, relator Michelle Chester filed a petition for writ of mandamus, complaining the trial court abused its discretion in striking her plea in intervention.  We agree and conditionally grant the petition for writ of mandamus.

## BACKGROUND

This is the fourth mandamus proceeding filed by the parties relating to the underlying child custody suit involving the custody of K.R.A.[2]  In April of 2009, an agreed order for

---

[1] This proceeding arises out of Cause No. 2008-CI-09633, styled *In the Interest of K.R.A., A Minor Child*, pending in the 225th Judicial District Court, Bexar County, Texas, the Honorable Peter Sakai presiding.  However, the order complained of was signed by the Honorable Antonia Arteaga, presiding judge of the 57th Judicial District Court, Bexar County, Texas.

[2] *See In re Chester*, No. 04-11-00641-CV, 2011 WL 4863711 (Tex. App.—San Antonio Oct. 12, 2011, orig. proceeding) (mem. op.) (Michelle's petition challenging temporary orders entered *sua sponte*); *In re Perez*, No. 04-11-00135-CV, 2011 WL 1900163 (Tex. App.—San Antonio May 11, 2011, orig. proceeding [mand. denied]) (mem. op.) (Nicole's petition challenging Arabela's intervention based on lack of standing); *In re Perez*, No. 04-11-00134-

grandparent access involving K.R.A. was entered between real party in interest and mother of K.R.A., Nicole Perez, and paternal grandmother, Arabela Teltschick.[3] In October of 2009, Nicole was arrested for driving while intoxicated with a blood alcohol level of .33 while K.R.A. was in the vehicle. Shortly thereafter, Arabela filed a petition to modify the parent-child relationship in the same cause number as the grandparent access suit. On November 24, 2009, the trial court granted a temporary restraining order for the protection of K.R.A., and, pending further temporary orders, appointed Arabela and Nicole temporary joint managing conservators of K.R.A., with Arabela having the exclusive right to designate the primary residence of K.R.A. The order found that "Nicole Perez has shown a pattern or a history of driving while intoxicated and her recent arrest [for] Child Endangerment has placed the child in the likelihood of imminent serious physical harm." As per the terms of the order, a hearing was set for December 2, 2009 on temporary orders. However, prior to the hearing, Nicole and Arabela entered into a Rule 11 Agreement, which continued the terms of the T.R.O. until a hearing on temporary orders could be held on January 5, 2010. Then, on December 23, 2009, Margaret Perez, Nicole's mother, intervened in the suit with Nicole's consent.

Beginning on January 5, 2010, the trial court presided over a two day hearing regarding temporary orders, at which Nicole challenged Arabela's standing to pursue the modification suit and sought to dismiss the suit and have K.R.A. returned to her. On the second day of the hearing, paternal aunt Michelle Chester (daughter of Arabela) intervened in the suit, contending she had standing to intervene because she "is related to the child within the third degree by consanguinity, and the child's present circumstances would significantly impair the child's

---

CV, 2011 WL 1900385 (Tex. App.—San Antonio May 11, 2011, orig. proceeding [mand. denied]) (mem. op.) (Nicole's petition challenging Michelle's intervention based on lack of standing).

[3] K.R.A.'s father is deceased.

physical health or emotional development." Nicole verbally objected to Michelle's intervention based on standing, but the trial court allowed Michelle to remain an intervenor at that time. At the hearing, testimony was taken concerning placement of K.R.A. with paternal grandmother Arabela, mom Nicole, maternal grandmother Margaret, and paternal aunt Michelle. At the conclusion of the two day hearing, the trial court determined it was not appropriate to allow K.R.A. to be returned to Nicole's care. Instead, the trial court appointed Nicole, Margaret, and Michelle as joint temporary managing conservators, with Michelle having the exclusive right to designate the primary residence of K.R.A.[4] Nicole was only given supervised visitation with the child.

Shortly after the hearing, on January 8, 2010, Nicole filed a motion to strike Michelle's plea in intervention, which Michelle asserts was considered and denied by the trial court at a non-evidentiary hearing on January 14, 2010. However, it does not appear that an order was signed at that time. On November 23, 2010, Nicole filed a plea to the jurisdiction and a motion to dismiss Michelle's intervention for lack of standing. The only order that appears in the record is one signed on February 8, 2011 that references a January 20, 2010 hearing.[5] This order denies Nicole's motion to strike Michelle's plea in intervention.

Nicole subsequently sought mandamus relief from this court, which asserted the trial court erred in failing to strike Michelle's plea in intervention because Michelle lacked standing. *See In re Perez*, 2011 WL 1900385, at *1. On April 1, 2011, while the petition was pending in this court, the trial court held a hearing to reconsider Nicole's motion to strike Michelle's plea in intervention, and on April 2, 2011 the trial court signed an order striking Michelle's plea in

---

[4] On March 3, 2010, the trial court signed temporary orders providing the same.

[5] Michelle contends that the order incorrectly references a January 20, 2010 hearing, and the correct date of the hearing was January 14, 2010.

intervention. However, two days after the order was signed, the trial court vacated the order after the parties agreed vacating the order was appropriate so that the mandamus could proceed in this court. After considering both the petition for writ of mandamus and the response filed in this court, this court denied the petition. *Id.* Nicole then sought the same relief in the Texas Supreme Court, which was also subsequently denied. *Id.*

Later, on July 19, 2011, Nicole filed a Motion for Reconsideration of Motion to Strike Plea in Intervention in the trial court, once again asking the trial court to reconsider Michelle's standing as an intervenor. This was the only motion set before the trial court at the hearing scheduled on August 30, 2011, which resulted in the trial court *sua sponte* entering temporary orders over Michelle's objection based on lack of notice. The temporary orders revoked Michelle's right to designate the primary residence of the child, giving Margaret, whom Nicole lived with, such right. No argument was made regarding Nicole's motion to strike Michelle's intervention and the trial court did not rule on such motion. Michelle subsequently filed a petition for writ of mandamus in this court that challenged the temporary orders, and on October 12, 2011 we conditionally granted the petition after concluding the trial court abused its discretion in modifying the existing temporary orders without notice and a hearing. *In re Chester*, 2011 WL 4863711, at *1. The next day, on October 13, 2011, the trial court signed an order striking Michelle's plea in intervention based on lack of standing. This petition for writ of mandamus ensued.

## ANALYSIS

### I.      Standard of Review

Mandamus will issue only to correct a clear abuse of discretion for which the relator has no adequate remedy at law. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex.

2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts," and "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Walker*, 827 S.W.2d at 840. In *Prudential*, the Supreme Court found that review of significant rulings in exceptional cases may be essential to: (1) preserve a relator's substantive or procedural rights from impairment or loss; (2) allow appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in an appeal from a final judgment; and (3) prevent the waste of public and private resources invested into proceedings that would eventually be reversed. 148 S.W.3d at 136. The Court articulated a balancing test by which to determine whether there existed an adequate remedy on appeal. *Id.* An appellate remedy is adequate if the detriments to issuing mandamus relief outweigh the benefits; but if the detriments are outweighed by the benefits, "courts must consider whether the appellate remedy is adequate." *Id.* The Court explained that prior cases in which the Court found an appellate remedy was inadequate "serve to illustrate that whether an appellate remedy is 'adequate' so as to preclude mandamus review depends heavily on the circumstances presented . . . ." *Id.* at 137. Furthermore, in cases involving child custody, "[j]ustice demands a speedy resolution," and appeal is frequently inadequate to protect the rights of parents and children. *In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 613 (Tex. 2006) (orig. proceeding) (citing *Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex. 1987)); *see also In re S.B.*, No. 02-11-00081-CV, 2011 WL 856963, at * 3 (Tex. App.—Fort Worth, March 11, 2011, orig. proceeding) (holding relators lacked an adequate remedy by appeal from the trial court's order striking their intervention).

**II.     Standing Under Section 102.004(a)(1) of the Texas Family Code**

Michelle contends she has standing under section 102.004(a)(1) of the Texas Family Code, which provides that "a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that . . . the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development."  TEX. FAM. CODE ANN. § 102.004(a)(1) (West 2008).  When a party is statutorily required to establish standing with "satisfactory proof," as section 102.004(a)(1) requires, the evidentiary standard is by a preponderance of the evidence.  *In re S.M.D.*, 329 S.W.3d 8, 13 (Tex. App.—San Antonio 2010, pet. dism'd).  We review the "present circumstances" of the child as they existed at the time the intervention was filed.  *In re Vogel*, 261 S.W.3d 917, 922 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding).

It is undisputed that Michelle is a relative within the third degree by consanguinity.  *See* TEX. FAM. CODE ANN. § 102.004(a)(1).  Therefore, we must determine whether Michelle met her burden with satisfactory proof that at the time she intervened in the suit K.R.A.'s present circumstances would significantly impair her physical health or emotional development.  *Id.*; *Vogel*, 261 S.W.3d at 922.  Michelle contends that at the time she intervened, the evidence clearly showed that allowing Nicole to have custody of K.R.A. would have significantly impaired K.R.A.'s physical health or emotional development.  We agree.

At the time Michelle intervened during the temporary orders hearing, Nicole was seeking to have the suit dismissed and the T.R.O. dissolved, which, if granted, would have returned K.R.A. to Nicole.  Michelle testified she sought to intervene because she was concerned K.R.A. would be placed back with Nicole instead of being placed with Michelle's mother Arabela.  The

testimony the day before she intervened established that Arabela herself had three prior DWI's. Therefore, at the time Michelle intervened, K.R.A.'s present circumstances were that the T.R.O. was set to expire and absent the entry of temporary orders placing K.R.A. elsewhere, K.R.A. would have been returned to Nicole. Accordingly, we must determine whether the placement of K.R.A. in the care of Nicole at that time would have significantly impaired K.R.A.'s physical health or emotional development. *See* TEX. FAM. CODE ANN. § 102.004(a)(1).

It is undisputed that K.R.A. was removed from Nicole's care after she was arrested for driving while intoxicated with K.R.A. in the vehicle. It is also undisputed that Nicole was on probation for a prior DWI and had at least one other prior DWI conviction. At the temporary orders hearing when Michelle intervened, the trial court stated: "I think there's no need of me tiptoeing, mom, you're not in a position right now to take care of this little girl." Later in the hearing, while Nicole's attorney was contesting Michelle's standing by arguing that the child's present circumstances would not significantly impair the child's physical health and emotional development, the trial court responded, "The court finds that the child is in danger. With that, adjust your argument." Furthermore, Margaret, Nicole's mother, testified that she was seeking temporary custody of K.R.A. because she was concerned about K.R.A.'s safety.

In addition, at the April 2011 hearing at which the trial court was again reconsidering Michelle's standing, the trial court reiterated the concerns it had with K.R.A. being returned to Nicole back in January of 2010 at the temporary orders hearing as follows:

> I have no doubt that what happened on January 10th, happened for a reason, 2010. I have no doubt - - I remember the fear that I had with this little girl and what was going to be happening if she went back to mom. And it was clear that the best parent in the room . . . was without a doubt Ms. Chester. And that's why - - and that's why the child has been with Ms. Chester this whole time. However, at that time, the child was in no imminent danger.

The trial court further stated at the April 2011 hearing: "when I said I find the child was in danger, it means I can take her away from mom because the child would be in danger if she was with mom." The trial court also acknowledged that at the time of the hearing, "we [had] a child in . . . crisis. . . . And we had an aunt ready, willing, and able. And even though it may or may not have been the correct legal result, I believe on that day that that was absolutely in the best interest of [K.R.A.] at the time, considering everything."

The trial judge has now responded to this current petition for writ of mandamus by stating that she disagrees K.R.A.'s "present circumstances" at the time of the temporary orders hearing would have significantly impaired her physical health or emotional development. However, based on a full review of the record, it is clear the trial court had significant concerns at the January 2010 temporary orders hearing of placing K.R.A. back in Nicole's care. K.R.A.'s circumstances at the time of the temporary orders hearing were that the T.R.O. was set to expire and absent the entry of temporary orders placing K.R.A. elsewhere, K.R.A. would have been returned to Nicole. As a result, the trial court appointed Michelle joint managing conservator with the right to designate the primary residence of the child, thereby determining Michelle had standing to intervene. Thereafter, this court denied a mandamus challenging Michelle's standing. We conclude there was satisfactory proof the "present circumstances" of K.R.A., at the time of the temporary orders hearing when Michelle intervened, would have significantly impaired her physical health or emotional development. We cannot now reassess those "present circumstances" and determine otherwise. Because Michelle had standing under 102.004(a)(1) to bring an original suit, she clearly has standing to intervene in the pending suit. Accordingly, the trial court abused its discretion in striking Michelle's intervention. Furthermore, we believe Michelle lacks an adequate remedy by appeal and mandamus relief is appropriate in this case

because it is necessary to preserve Michelle's substantive rights from impairment or loss. *See Prudential*, 148 S.W.3d at 135; *see also S.B.*, 2011 WL 856963, at * 3.

### III.    Standing Under Section 156.001 of the Texas Family Code

Finally, Nicole's primary contention in her response to the petition for writ of mandamus filed in this court is that Michelle lacks standing to request conservatorship via a modification suit because the order entered in the original suit was a grandparent access order and not an initial custody determination. *See* TEX. FAM. CODE § 156.001. However, with some exceptions not applicable here, a trial court maintains continuing, exclusive jurisdiction of the parties and matters provided by this title. *Id.* § 155.002. Title 5 includes all matters involving the parent-child relationship and suits affecting the parent-child relationship, which includes a suit for possession or access by a grandparent. *Id.* Title 5; *id.* § 153.432 (suit for possession or access by grandparent). The provisions of chapter 156 clearly govern suits that attempt to effect a change in custody following the entry of an initial custody order. *Id.* §§ 156.001–.105; *In re P.D.M.*, 117 S.W.3d 453, 456 (Tex. App.—Fort Worth 2003, pet. denied). Section 156.001 provides that "[a] court with continuing, exclusive jurisdiction may modify an order that provides for the conservatorship, support, or *possession of and access* to a child." TEX. FAM. CODE § 156.001 (emphasis added). Furthermore, a person who has standing to sue under chapter 102 may file a suit for modification in the court with continuing, exclusive jurisdiction. *Id.* § 156.002(b). Because we have determined Michelle has standing under section 102.004(a)(1) and because the trial court retained continuing, exclusive jurisdiction, we conclude Michelle has standing to request conservatorship via a modification suit.

## CONCLUSION

Based on the foregoing analysis, we hold the trial court erred in striking Michelle's plea in intervention. Accordingly, we conditionally grant the petition for writ of mandamus. The trial court is ordered to withdraw the October 13, 2011 order striking Michelle's plea in intervention. The writ will issue only if the trial court fails to comply within fourteen days.

Sandee Bryan Marion, Justice